The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. You may be seated. Mr. Battle? Good morning, Your Honors. May it please the Court, my name is Preston Battle and I have the pleasure of representing the Appellant and Defendant, Damond Durant, in this matter. We're here to appeal a finding by a jury for a claim that does not appear in the operative complaint. It was not mentioned in the pleadings, it was not raised in discovery, it never appeared in the summary judgment briefing, and it was not introduced in the court proceedings until after the District Court raised the issue at the final pretrial conference five days before trial. When she told counsel for the plaintiff and appellee, Mr. Nicholson, that if there were no finding of action under color of state law for the federal constitutional claims, or within the scope of employment for the state law claims, that Mr. Nicholson would lose his case. I'd like to discuss three reasons from our briefing as to why the court should reverse the District Court's judgment in favor of the plaintiff on the gross negligence count. First, the District Court did not have jurisdiction over an unpledged claim for breach of the duty to not assault another person under a theory of gross negligence by a private person. Plaintiff's entire case is premised on gross negligence in carrying out police conduct and does not support any claim against non-police conduct. Second, and relatedly, if the District Court erred in finding that Mr. Durant was not prejudiced by permitting an alternative unpledged claim for gross negligence by a private person to be submitted to the jury. And third, the jury's award of $250,000 for compensatory damages on someone holding a gun at their side during an entire interaction when Mr. Nicholson's friend approached Mr. Durant in a threatening way is excessive and it should be remitted and overturned. You say it's not excessive or gross in terms of the way he approached the young man, younger fellow? That's not excessive or gross negligence? I'm saying that the jury's award of $250,000 in compensatory damages on the gross negligence count is grossly excessive and should have been remitted in the trial court. Why was that grossly excessive? It was grossly excessive because of the inconsistent testimony and the lack of other certain testimony in the case below. There was no medical proof as to corroborate Mr. Nicholson's testimony about any physical manifestations or emotional distress from an encounter during which Mr. Durant, an off-duty Baltimore City police officer, pulled a gun that he was... Didn't the plaintiff or maybe some of his family members testify about the effects on him of this event? Wouldn't that be sufficient for the jury to make a determination? It would, Your Honor. However, in our motion for remitted or NEC remitted or any alternative to our motion to alter an amendment for new trial, the district court failed to consider the inconsistencies from the testimony of some of the family members that was present in the record below. Wouldn't that have been for the jury to weigh in the first instance? Yes, it would have been for the jury to weigh in the first instance. However, it does support the fact that this was a grossly excessive verdict based on a count of gross negligence that didn't appear in the amended complaint and didn't come up until shortly before trial. I'm just not clear why you're saying it's grossly excessive. Like $50 million, I think, would be grossly excessive. Help me understand why $250,000 under these circumstances is grossly excessive. Yes, Your Honor. It really goes back to the gross negligence claim in and of itself. This is a situation where Mr. Durant approached these young men suspicious as to why they were standing under a carport in the neighborhood. He did not recognize them. Pulled a gun on them. He did brandish his weapon. He did pull his lawful sidearm from his hoodie, but he didn't point it at either of the individuals. From his hoodie? From his hoodie pouch. He was wearing a hoodie. Just to change the issue. So the police officer had a hoodie. Yes, Your Honor. And he pulled a weapon on it. Loaded, too, wasn't it? It was loaded, Your Honor. Yeah, it was racked. One in the clip, one in the hole. There was, Your Honor. However, it was not... Well, at the time the firearm was brandished, he had not identified himself as a police officer. That's correct. He held it at his side during the entire interaction. It was not until later when Mr. Nicholson's family members met him in the next courtyard that he identified himself as a Baltimore City police officer. He said he thought he was going to die. Didn't he say that? Mr. Nicholson did testify that he thought that this was the end. How old was he? He was 16 at the time, Your Honor. He was a 16-year-old kid. Yes, Your Honor. And that's pretty traumatizing, isn't it? I do agree that it is an upsetting encounter that would upset anyone. However, for just the fact that a gun was held at the police officer's side, not pointed at his head, not waved around... But this kid didn't know he was a police officer at that time, correct? Yes, that's true. But even if he did not know that he was a police officer, I still posit that Mr. Durant's actions with the gun at his side did not create the imminent risk or the threat of immediate harm. See, I disagree. I think anytime a gun is presented like that, that changes the whole dynamic of the interaction. It does change the dynamic of the interaction, Your Honor. That is true. And I would say, too, for the relief that we're requesting on the remittitor, we're requesting a lessening of the compensatory damages. At the end of the day, why was the jury wrong? You got to show that this was not merely erroneous, but substantially erroneous to get the remittitor. I mean, it may be that other people or another jury would have come to a different conclusion, but they heard all of the evidence, and it was up to the jury to weigh that evidence. And they came up with this dollar figure, and the district court went through at some point a recitation of similar cases with similar dollar amount awards. It just seems like to me you have a very difficult task of overturning the jury verdict. I would agree on the remittitor issue. It is a discretionary standard, A, for the jury verdict, and then B, for the trial court or the district court's determination on our motion for remittitor. But I would still say that under the Nussman factors, the lack of medical testimony, the inconsistencies both in the physical manifestations that were tied to the finding in favor of the plaintiff and some of the other inconsistencies, but then also the similar, as you stated, Judge Agee, the similar cases. The cases, as we explained in our briefing, really aren't similar. I think in upholding the jury verdict award of $250,000, what we're really doing is creating this very large spectrum of gross negligence where we are, again, there was a gun introduced in the situation. He did have the gun by his side. It did, obviously, the jury found that that changed the dynamic of the situation. However, the other cases that the district court and that we've discussed and that the district court stepped through, such as Brooks v. Jenkins, where there was a dog that had no vicious tendencies whatsoever, was shot and killed very close to its owners. Or the Francis v. Johnson case where the young man, similar in age to Mr. Nicholson, was essentially kidnapped by a group of officers in a van. They threatened to sexually assault him with a nightstick. They broke his phone in half. They abandoned him miles away to where he had to walk home. In the Market Tavern v. Bowen case, the court found that the verdict of the award of $150,000 was not excessive, where the security guards beat and kicked the plaintiff, causing permanent sensitivity to hot and cold and jaw pain as well. And then the case that's cited in... Your point is about the $150,000. That wasn't excessive, you said. That was not excessive. However, that was a beating by the security guards of the individual. So that proves, what, about your $250,000? Well, I... I was just trying to get the logical connection. Yes. How does that prove that maybe they didn't give enough in that case? I mean, I don't know. Potentially, the facts of that case, however, were that the jury verdict was not grossly excessive. I don't think the review was, or there was an appealed issue of that jury award not being enough. I see the thing about Judge Young's question to you about the gun that changed the whole dynamic of it. Do you realize, do you do any criminal work? I do, Your Honor. Do you realize how much time, people get more time enhancement when people, put people through a situation where a gun is introduced? The fact that they're a teller or a cashier or someone, and you do a lot of time because they realize that people talk about their lives flashing before them and all kinds of things in that situation. It's a traumatic thing. And that kid, for the rest of it, I don't mean to call the kid disrespectful, but that young person, for the rest of his life, he'll never forget that. Yes, Your Honor. And I'll say this. The, you know, in those cases where, you know, a bank teller, there's a robbery, there's a, you know, an armed robbery, there's an assault with a deadly weapon, the gun is usually pointed at someone's head. But the same principle applies. I'm sorry to cut you off. The same principle applies is that when the gun is introduced, it causes an element of fear. And I think, you know, what Judge Gregory is saying, not to put words in his mouth, is that that fear that that young man experienced is going to be with him probably for the rest of his life. So given that, why is $250,000 excessive? Yes. And again, I kind of go back to that spectrum of gross negligence that I think that if the award is not remitted, I think that we're kind of creating here. And I want to talk briefly about the Barbie versus Pope case, which was cited for plaintiffs' non-pattern jury instruction 16, which was a case where, you know, the gun, the person was complying with the officer, the gun was pointed at that person's head. And then after that, they were shot in the neck. So that's gross negligence. But then also, you know, holding a gun at your side equals a $250,000 compensatory damage award. So are you on the remitter now or are you arguing that there was no gross negligence here? Well, I think that that's still illustrative for the remitter issue. I think it's relevant for the remitter issue of the fact that, you know, it explains that it is a grossly excessive award, because it is so much kind of lower than the conduct that we see in the, you know, the other cases that we've discussed. I thought your main focus, this may be my mistake, was going to be we didn't have notice of this claim, not the remitter. And we've talked a lot about that and you're running short on time. Tell us something about your notice argument. Yes, Your Honor. So the fact is, is that this gross negligence claim for, you know, private conduct of a kind of a reasonable ordinary person was not pled in the amended complaint at all. It's really this kind of unpled theory of assault to not assault another person, as counsel for the plaintiff stated at page 759. Does paragraph 103 of the complaint have any particular relevance here? I mean, it does deal with a count, I think, that was either dismissed or found for your client. But it says, in the alternative, defendant Durant's unconstitutional deprivation of plaintiff's liberty on the invalid basis that he had never seen plaintiff before constitutes gross negligence and Durant is personally liable for his conduct. Yes, Your Honor. Personal liability under gross negligence obviously is pled, but it is, and I've realized that I've run out of time. May I answer your question? Yes. Thank you. You know, it is, it is gross negligence in the conduct of police conduct for which Mr. Durant, yes, could be personally liable, but it is, it is, you know, going beyond the kind of acceptable limits of policing and police conduct that is the only thing that is pled. But that paragraph, which may not be relevant to the claim that the jury found on, seems to be limited to personal liability, not policing. It is personal liability because his policing conduct, because of his policing conduct. But it says, after it discusses his activity prior to that as a police officer, it then pleads in the alternative, and it talks about personal liability for his conduct. There probably is an answer as to why that may not be relevant, but there is that one paragraph that I found in the complaint that seems to directly deal with personal liability for gross negligence. It does deal with personal liability as to the remedy and to whom the judgment can attach, but it doesn't, to me, address the, you know, a duty of a private individual and the personal conduct here. It is still everything in the, and we have to look at kind of the complaint in its entirety, and the, you know, the complaint states that at all relevant times, he was, Mr. Durant was acting in his authority as a Baltimore police officer in carrying out excessive force and unlawful seizure and gross negligence. And I'll be happy to address that further on my rebuttal. Thank you. Thank you, counsel. Mr. Hansel. Thank you, Your Honor. And may it please the court, the verdict in this case is clearly not excessive. I want to correct a misstatement that my colleague made. I saw him present to this court that the gun was by the side and he did it by holding his hand down by his side. I think, as the court is likely already aware, at page 977, 988, and 992, the officer described the gun in the low ready. The low ready is not down by one side. It is at a 45 degree angle. He described that all he needed to do to fire was lift it and it would be pointed at the center mass of this child, who at the time was 16 years old, who at the time testified that he thought that day would be his last. Who at the time went home and at 16 and 17 slept in his mother's bedroom on the floor at night because he couldn't stand his own bedroom because you could see where these events had occurred. Who changed his opinion and wanted to go off to military school, having previously been opposed. Whose mother, grandmother, and sister, and himself all testified is, was, and remains a different human being than the young boy who went into that interaction. He was approached by this man wearing a hoodie who drew a gun on him. It was the man's own personally owned firearm. And the man admits at the time, out of his mouth, Durant's, not my client's, that quote nothing was going on, 965 at the joint extract. That they were just talking under the pad. This is a young boy with a friend in his own neighborhood, engaged in absolutely no misconduct, who's approached aggressively. And it's important to understand also that not only did that firearm come out, not only did it come up to that low ready 45 degree angle position, but when this young man, Mr. Nicholson, did what we would hope he would do and disengaged and walked away, that the officer followed him and intentionally kept his gun, this is page 992, kept his gun visible to these young men as he followed them as they fled to their home before, thankfully, their mother and three very brave women and their family came and put themselves between these children and the man with the gun. He testified at trial, as did his family, that he cried himself to sleep every night for months. He testified at trial that he no longer participates in any of his hobbies that he used to previously participate in, that he hides in his room. Even to that point later at trial, he is still scared to go out, scared to do anything, and is suffering significant emotional trauma. As the court is well aware, we have a very deferential standard precisely so that the jury, the members of the community who are given a voice in this process, can look people in the eyes, can see the testimony from this child and his family, and can make an appropriate award. And that is exactly what happened in this case, and it should be upheld. With respect to the comparator cases, the only one offered by the defense is a case named Jones v. South Peak. This is someone who was terminated, just lost a job. Their life was never at stake. And not only that, but when we scratch the surface of the case, we find out that it was a job they were destined to lose anyway. So they didn't just lose a job, they just lost it a little earlier than they otherwise might have lost the case, and that verdict was reduced to $100,000, which it's important to recognize when looking at these comparators. That was $100,000 in 2013, which is almost $140,000 today. More importantly, the cases that the trial court used as comparators are quite reasonable, because although counsel points out they do involve some physical contact, some level of injury, in the one case, Francis v. Johnson, the person walked away from it and was otherwise fine. In the other case, the person had an issue with the jaw, I think a broken jaw, and feels, to this day, temperature changes in their jaw. But the distinction is, while there was, in fact, physical injury in those cases, there was never the threat of death. Never the threat of death. Nobody in those cases said, I thought I was going to die, and it wouldn't have been rational or reasonable for them to say so, similarly with the shooting of the dog. And I want to stress that those cases, we don't just look at Brooks v. Jenkins and say, well, it was a dog shooting, that's $200,000, maybe $200,000 is reasonable here, because the $200,000 in that case in today's dollars is $272,000. In Francis v. Johnson, the $215,000 in today's dollars is $291,000. In Market Tavern, the $150,000, that case hails from 1992, is $345,000 today. So when we look at these comparators, I think that's important. I want to address this question of notice of the gross negligence claim, and I want to address Judge Agee's point very directly. Your Honor correctly points out that in paragraph 103, the personal liability is specifically mentioned. And the reason my colleague likely did not take the Court's invitation to try to distinguish that from the gross negligence count is the following. At Joint Appendix 40, the way the complaint was structured, in every count, the very first paragraph incorporates every other paragraph in the complaint. So for pleading purposes, paragraph 103 is incorporated and falls under specifically the gross negligence count. In addition, at Joint Appendix 24-25, it is alternative- You didn't argue that when you were in the District Court, did you? I'm sorry, Your Honor? You didn't argue paragraph 103 in the District Court? We did not, Your Honor. In fact, to be quite frank, it's an excellent find by the Court that we missed. Well, I would have probably said, well, that was a Maryland Declaration of Rights claim in that particular count, and that went away, and that's why it didn't apply, but that wasn't the answer. That would be the answer but for the first paragraph in the gross negligence count incorporates every other paragraph in the whole complaint, whether above or below, and that's at the Joint Appendix at page 40. However, what we did point out below, I think, does the same job because at paragraph 165, there's an allegation, again, incorporated everywhere, that there's a manifest duty, and I'm paraphrasing because it's a lengthy paragraph, but not to brandish the firearm without any legal right to do so. In paragraph 160, and this one I'll quote directly, when defendant Durant stopped, interrogated, and brandished a weapon at plaintiff, he had no constitutional, that's as an officer, or legally valid basis for doing so, that's as an individual. Now, more importantly, with respect to this claim, I want to first stress there is no difference between gross negligence as a police officer or as an individual. There's no case cited to the court that there are separate claims or separate elements or separate tests. Gross negligence is a common law count that doesn't require government action, so that sort of distinction makes no sense, and you won't find it in the law of gross negligence in Maryland, and the defense has not presented any case that says there's a distinction at all. Gross negligence is gross negligence, and your actions are measured against the legal standard, regardless of the capacity in which you performed them. In fact, to go one step further, even if this were shading into the realm of police action or constitutional law, Maryland has rejected repeatedly any distinction between personal capacity or official capacity, even for purposes of constitutional claims. So even in the context of a constitutional claim, you may be acting in your personal or professional capacity, and there is no distinction, so it needn't even be pleaded in Maryland. We've cited them. So for Maryland state law purposes, it would be unlike, say, a federal section 1983 claim? That's correct, and in Manakee v. Mass Transit, in DePino v. Davis, and in Ritchie v. Donnelly, which we have cited, the Maryland Supreme Court and Court of Special Appeals, now the appellate court in Maryland after a name change, have made clear that that distinction is not recognized even for constitutional claims, but the distinction would be nonsensical for a common law claim that doesn't rely on government action, and defense counsel has cited no case in which there's a distinction for gross negligence between police or individual misconduct. More importantly, the record shows that defense counsel was aware all along. This is not a case in which there can be any credible argument of surprise, and that's readily proven. At the summary judgment level, defense counsel argued as to the constitutional claims, I was acting in my personal capacity, made no motion as to gross negligence. If defense counsel believed gross negligence was only pleaded in some official capacity or as a police officer, again, distinctions that don't exist, then at summary judgment, when that defense was offered against constitutional claims, I was acting as an individual, not as a police officer, surely it would have been offered against gross negligence claims. That's point one. Point two, when defense counsel first offered its jury instructions before the judge raised this issue at a pretrial hearing, the jury instructions from the defense made no distinction about individual versus professional capacity. There was no request that in order to find gross negligence, the jury had to find that he was acting in any particular capacity. Finally, and to trial counsel's credit, this is admitted in the record. I had frequent discussions, as the court might imagine, throughout the case about the parameters of the case with defense counsel. And I'm not telling tales out of school. This is in the record at page 769 and 770. Because when the court raised this for the first time at a pretrial hearing, one of the things I explained was, your honor, it's in the complaint. But in addition, there's actual notice. I know because defense counsel and I have discussed previously that even if there is no police activity, and in this case, it was a guy in a hoodie. He was off duty. He pulls out his gun that he owns. So this was not the case that he was in a police car. It was a serious issue in the case. And everybody knew that the whole time. And I discussed with defense counsel, even if he's not acting as a police officer, I may lose my constitutional claims, but there's still gross negligence. Not once did defense counsel respond by saying, oh, no, gross negligence is only pleaded in connection with his activity as a police officer. And it was very clear during those conversations that we were both of the same mind. And to his credit, defense counsel admits that at 769 and 770. More importantly, to take a step further back, the reason gross negligence is pleaded in Maryland is always to get at personal liability. It is one of the exceptions under the Tort Claims Act that takes an officer acting outside of his duty if he performs gross negligence. And the structure of the Tort Claims Act is such that either the government or the officer is liable, but not both. And so the fundamental purpose of gross negligence in a civil rights claim in Maryland is personal liability. And that's why we have paragraphs like paragraph 103. And my esteemed colleague at trial certainly understood that. We discussed it many times. Unfortunately, he's not here to be asked that question. More importantly, from the outset of the case, the city hired private counsel. The city hires private counsel when there is personal liability or the serious threat thereof because there is a conflict of interest in cases. Again, recall that I said the structure of the Tort Claims Act is that either the government's liable or the officer for these types of claims, but not both. And so the city, who has an enormous city solicitor's office, who has lawyers who are charged with defending police misconduct full time, we all hope for a world where that doesn't happen anymore and isn't necessary, but it is in this world. They only hire outside counsel from the beginning of the case when there is a risk of personal individual liability. So this is a case that from the outset, counsel knew when he was hired, there was the risk of personal liability. When we got to summary judgment motions, he made arguments that if he believed gross negligence was truly only pleaded for police misconduct, he would have made the arguments that he made in connection with the constitutional claims also in connection with the gross negligence claims. When he and I discussed the case throughout, he not once said that there would be any liability or that we were pinned or stuck with police misconduct for the gross negligence claim, and I repeatedly made the point that that wasn't. There are at least two and now three paragraphs in the complaint that very clearly put him on notice, all of which are incorporated into the gross negligence count. So for all of those reasons, counsel was on fair notice, not just through the pleading, but actual real notice based on our conversations and his failure, for instance, to put something different in a jury instruction that we were seeking individual personal liability and suing for violation of personal duties. And that is, after all, the structure of the law in Maryland. It's either the government or the individual, not both. The purpose of gross negligence is in effect to say to the court and to defense counsel and to the jury, if this person isn't acting as a police officer and therefore is not subject to constitutional liability, then we are in a position where we can still seek liability. Finally, I think it's important to understand counsel's activities in waiving this issue. This is not a case where defense counsel objected early and often. In fact, having understood with certainty by the time of the pretrial, and I've suggested the record suggests throughout the whole case, but having understood with certainty at the time of the pretrial the trial judge's view of the case, defense counsel came into trial and affirmatively argued that his client was just a nosy neighbor and just some guy. In other words, his opening argument was to the effect that his own client was not acting as a police officer. So not only did he fail to object at trial, and I'll touch on that point in a moment, but this is the case where it isn't just a waiver by omission. He leaned into the issue and relied on his client's status as an individual to defend this case, and successfully so after all. He won the constitutional claims on exactly that argument. So having leaned into this issue and having pressed it himself that my client was acting as an individual here, he should hardly be permitted to come before this court and complain that he didn't have notice somehow of this dichotomy that he himself pressed. And he had pressed it again, as I said, on other issues at summary judgment. But more importantly from a waiver perspective, Durant failed to object to the jury instructions when they were given that allowed for liability under the gross negligence count both as a police officer and in his individual capacity. He did not move for judgment at any time for any reason on the gross negligence count. Certainly to preserve his argument he should have objected to the jury instructions. Then at a motion for judgment stage, he should have said this wasn't properly pleaded, and therefore, judge, you should dismiss any portion of gross negligence that relies on individual conduct. And then finally, at the motion for judgment stage, not only did he not make a motion, but he said, quote, gross negligence without limitation, those are my words, but he said gross negligence should advance to the jury. That's in the appendix at 1164. So he fails to object to the jury instructions, admits that it should go to the jury, and leans into the issue himself. So even if there were a concern, the concern has been waived. And there's good reason why he didn't do these things. This was not an oversight of counsel. By the time we were at trial, counsel had already admitted to the trial judge that he and I had long for months had these discussions about the fact that gross negligence clearly applied both to any actions as a police officer and to any actions as an individual in the case. So for all of those reasons, the court should affirm, I would only add in my last minute, that counsel has also failed to show any prejudice. They have vaguely said, well, we would have done other discovery, but they haven't identified any discovery. And as the trial judge found, what about this interaction would be different in discovery if we pleaded more specifically, and I think it's covered in the complaint, but if we pleaded more specifically individual versus police action? Absolutely nothing, especially when we remember that defense counsel, in summary judgment, defended the constitutional claims by saying his client acted in his individual capacity and argued that to the jury at trial. So this is a case where he did look into those things. He did assert those issues throughout the case, and certainly there's no prejudice. An argument was made, I think, in the papers. Well, maybe they would have asserted a contrib argument. First of all, Ramos and other cases show that contributory negligence had never been adopted in Maryland as a defense to gross negligence, but even if it were, and even if this were going to be the first case that recognized it, what contrib by the officer's own admission? This is a 16-year-old child literally minding his own business, standing in his neighborhood, engaged in no criminal misconduct, and for that reason the court and the jury were correct, and I ask this court to please affirm. Thank you. Thank you, Mr. Hensel. Mr. Bally, you have some time reserved. Yeah, sure. So was there ever a motion to dismiss count 10 as to personal liability for gross negligence? There was a motion for summary judgment as to the gross negligence, but not for personal liability. It just was that there was no—it's tied to the excessive force type analysis. But there was never a motion to dismiss for failure to plead? For failure to plead, no, Your Honor, but that's because the claim wasn't in the amended complaint to begin with. And Mr. Hensel talked about the prejudice and the purported lack of prejudice, but the fact that if the amended complaint had properly pleaded a duty, a legal duty by a private person separate and apart from the police conduct, which is that manifest duty to abide by constitutional policing, is the only duty that's pled in the amended complaint, then we are prejudiced in that we didn't get to move to dismiss on that. We didn't get to move for summary judgment on that. We didn't get to try and bring the contributory negligence argument, and we would have maybe been the first case to— I think Ramos does give enough kind of ground that contributory negligence can be an affirmative defense in this case. How so? Can you tell me how, in this case, the facts of this case? Well, I mean, just there's the recognition that contributory negligence can be an affirmative defense. I know that's an ethereal. I'm talking right here in terms of this case. Tell me how in the world could you plead, I mean, with any sense of whatever the duty is, officer of the court or whatever in terms of the facts of contributory negligence here. What was the contribution of negligence at all? Not even a scintilla. Tell me. Yes, Your Honor. I mean, the fact that it wasn't—I'll answer it this kind of way. The fact that it was not tried, that's the real basis of the prejudice. In Pinkley, it is the threat of severe prejudice by the surprise claim that's delayed. And, you know, Mr. Hansel said that this claim was discussed at length with defense trial counsel for months before trial. All of this was almost a year after the summary judgment ruling in July of 2023. This was all after the pleadings, you know, amendment stages had closed, all after discovery had closed, and there was no admission in, you know, conversations, informal chatter between counsel of, yes, you're right. But your client was there and would be able to give you all that you would need throughout the whole incident as to anything that would be contributory negligence, right? There's no evidence that he had any prior connection with this young fellow, is there? No, Your Honor, but— Within everything that's in the box of causality, you don't need discovery. Just talk to your client. Well, and not even discovery. The prejudice is really in the lack of the ability to argue dispositive motions at any time before trial because that claim was hidden from the pleadings and still to this day, a claim for assault or a claim based on a duty not to assault someone in your private capacity is nowhere in the amended complaint and did not really even come up until the district court recognized and said at the pretrial conference to counsel for Mr. Nicholson, like, if you don't have color of, you know, if you don't have a color of law and you don't have within the scope of employment, then there's going to be a finding for the defendant. And so the fact that we were— Did the court go on further and say that—did it cut them off on that? Well, the court put counsel for Mr. Nicholson on the spot and what he came up with was, well, there's a duty not to assault somebody, Your Honor, and that's at page 759 of the joint appendix. And there's a discussion after that during which, you know, at that time, defense counsel did object and the trial court found in the memorandum opinion on the motion to alter amend or for new trial that we did properly object in the jury instructions and in the verdict form. We had a proposed special interrogatory that, you know, said, was Defendant Durant acting as a law enforcement officer or as a private citizen when he displayed his weapon during the encounter with Plaintiff Nicholson on November 10, 2017? And so, you know, that was the, you know, Mr. Hansel talked about the party's theories, right? The plaintiff's theory the entire time was that everything was done under color of state law. Everything was tied to this duty to abide by, you know, constitutional limits of policing. And so, yes, the defense's theory was that, you know, because of the pleading in the amended complaint, we're not acting under state law. And if we're not acting under state law, then there can be no finding of liability. And it's the kind of late... Your defense was you didn't do anything wrong, was it? Certainly that he was justified in fearing for his safety, Your Honor. Not that he didn't do anything wrong, but that's the kind of the ultimate result. But it was, you know, it was he perceived that there was a threat because of Mr. Nicholson's friend who was approaching him, at which point he did remove his gun from his hoodie. Yes, so there is a justified basis for what he did, which there should be a finding of no liability. And that was the defense. Because of the... If I may finish my sentence, Your Honor, I realize I'm out of time. Because of the kind of surprise, you know, late theory that arose at the final pretrial conference, we were, you know, prejudiced and precluded. Did you ask for a continuity? No, we did not, Your Honor. But we did object throughout the case. Why didn't you ask for a continuity so you can get more discovery if you needed discovery? That's what lawyers normally do. Well, Your Honor, instead, we brought this appeal. Maybe that's, you know, what an invited error is? If there was error? Invited error? Yeah, you know what that is? I don't. Oh, okay. No need to ask you any questions about it. Okay, okay. Well, we urge the court to reverse, and thank you all for your time today. Thank you. Thank both counsel, and we'll proceed, come down, talk to counsel about Greek counsel, and then we'll proceed to our final case of the morning.
judges: Roger L. Gregory, G. Steven Agee, Roderick Charles Young